PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTONIO VARGAS,

   Plaintiff,

 -v-

JUDGE ALEX RENZI, et al.,

   Defendants.

21-CV-06165 DGL
ORDER

---

*Pro se* Plaintiff, Antonio Vargas, a "prisoner"[1] detained at the Monroe County Jail, ("MCJ") has filed this action seeking relief under 42 U.S.C. § 1983.   Docket Item 1 ("Complaint").   His Complaint, which is overly repetitive but short on relevant factual allegations, comprises 31 separate but overlapping claims against 50 Defendants. *Id.*   It alleges, primarily, that during his criminal prosecution in Monroe County and pretrial detention at the Monroe County Jail ("MCJ"), he has been wrongfully classified or mis-diagnosed as suffering from mental health issues, ordered to undergo a psychiatric evaluation, forced to take medication at the Rochester Psychiatric Center ("RPC"), and removed from general population at MCJ and confined in administrative segregation or other solitary-type housing used for suicidal inmates.   He also has filed a Motion to proceed *in forma pauperis*, along with the required Authorization, Docket Item 2, and a Motion to appoint counsel, Docket Item 6.

For the following reasons, Plaintiff is granted permission to proceed *in forma pauperis*, some of his claims are dismissed with prejudice, pursuant to 28 U.S.C. §§

---

[1] 28 U.S.C. § 1915(h).

1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2), some will be dismissed with prejudice, pursuant to *id.* §§ 195(e)(2)(B)(ii) and 1915A(b)(1), unless Plaintiff files an amended complaint as directed below, and others may proceed to service upon filing and screening of an amended complaint if and when Plaintiff files one as directed.

## DISCUSSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed the required authorization, Docket Item 2, he is granted permission to proceed *in forma pauperis.* Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), this Court must screen this Complaint.

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

2

## I.   THE COMPLAINT

In evaluating the Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in pro se cases after *Twombly*: "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation

of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of respondeat superior is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (internal quotation marks and citation omitted).

## III.  PLAINTIFF'S CLAIMS

Liberally construed, the Complaint alleges the following.[2]

### A.  Criminal Prosecution (Complaint at 15-17, 1st-3rd Claims)

On January 15, 2020, Defendant Judge Alex Renzi, New York State Supreme Court, Monroe County, denied Plaintiff's request to remove his court-appointed counsel, Defendants Joshua Stubbe and Victoria Bahl of the Monroe County Public Defender's Office, and appoint new counsel. Plaintiff's counsel wanted him to accept a plea offer

---

[2] In light of the procedural posture of this case, initial review pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(b), the recitation of facts is drawn exclusively from Plaintiff's Complaint, the contents of which must be accepted as true for purposes of this review. *See Erickson*, 551 U.S. at 93-94 (citing *Bell Atlantic Corp.*, 550 U.S. at 555-56). This tenet, however, is inapplicable to legal conclusions, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which make up a significant portion of Plaintiff's allegations.

and disagreed with him on many issues.  Complaint at 15 (1st Claim).[3]  Judge Renzi also denied Plaintiff's request to represent himself.  *Id.*  A few weeks later, Judge Renzi ordered a mental competency examination, *see* N.Y. Crim. Pro. Law, § 730.30, even though Plaintiff did nothing "wrong."  Stubbe and Bahl agreed with the order.  *Id.* at 6 (2nd-3d Claims).  Following an initial examination, Defendants Renzi, Stubbe and Bahl, and Mott and Wiseman, RPC psychiatrists, "agreed" to send Plaintiff to RPC for further evaluation because Plaintiff told Mott and Weisman during the examination that he had the right to refuse the examination.  Stubbe and Bahl advised Plaintiff to answer the questions during the examination and began arguing with him.  This caused Plaintiff to walk out of the examination.  *Id.* at 16-17.

### B.  Treatment at RPC (Complaint at 18-20, 4th-5th Claims)

Between March 23 and May 12, 2020, a number of health care and security professionals at RPC[4]—Defendants Jessica "Ee," Psychiatrist, Beth Caton, "Mental Health Brain Study," Christina Acosta, Mental Health Social Worker, "Mark," "Mental Health Security," Cyphrin, "Mental Health Security," Nelson, Psychiatrist, and Dolittle, "Mental Health"—"violated" Plaintiff's rights in a number of ways.  On March 23, Jessica Ee and Acosta had Security Officers Mark and Cyphrin grab Plaintiff and forced him to take "mental health" medication without a court order.  Complaint at 18 (4th Claim).  On April 21, Nelson and Caton were ready to order Security Officers to strap Plaintiff down and inject him with 20 mg of Zyprexa if he was not willing to voluntary ingest Zyprexa.  Plaintiff relented so he was not injected with Zyprexa.  *Id.* at 18-19 (5th Claim).

---

[3] Unless otherwise noted, page references are to those generated by the Court's Case Management and Electronic Filing System (CM/ECF).
[4] RPC is an agency of the New York State Office of Mental Health.  *See Freeman v. Kitts*, 16-CV-06668, 2017 WL 475679, at *1 (W.D.N.Y. Feb. 6, 2017).

On May 12, 2020, Defendant Judge Odorisi, New York State Supreme Court, County of Monroe, ordered that Plaintiff be medicated at RPC even though Plaintiff was "behaving himself." Plaintiff only had two fights with another inmate at RPC, which were instigated by the other inmate. He also was willing to work with his attorneys on his trial after his release from RPC and "most important that lets just say for example I am bi-polar I don't have to take mental illness medication cause I'm not a threat to myself and to others which means I don't try to commit suicide and I'm not going around beating up inmates for NO REASON." *Id.* at 19-20 (6th Claim) (emphasis in original).

**C. Treatment and Conditions of Confinement at MCJ** (Complaint at 20-49, 7th-31st Claims)

The remaining claims in the Complaint all revolve around Plaintiff's treatment at MCJ and the conditions of his confinement between October 2020 and January 2021. He sues the "Health Administrator," Thompson, and over 35 mental health and security personnel at MCJ. Complaint at 20-49 (7th-31st Claims). At different points of his detention at MCJ, beginning on October 12, 2020, Defendant mental health and security officials—Thompson, "Monica,"[5] Psychiatrist, "Faith," Mental Health Nurse, Spinner, "Stephanie" and Williams, Mental Health Staff, and Lt. Fanina, —falsely stated that Plaintiff suffered from mental health issues ("mental health lacking") and had him removed from general population and confined in the "rec-annex" in a "constant cell" used for inmates who have tried to commit suicide, though he never tried to commit suicide. Plaintiff also was told that he could not return to general population until he took his medication. *Id.* at 20-23, 41 (7th-9th and 25th Claims). These Defendants also falsely

---

[5] Quotations are used only to denote that Plaintiff provided only the first name of a defendant.

advised Judge Renzi and Stubbe that Plaintiff had mental health issues, which caused Renzi to order the mental examination referred to above.  *Id.* at 24.

During a significant part of Plaintiff's confinement at MCJ, a number of Defendants—Thompson, Monica, Williams, Faith, Cpl. Capon, Sgt. Knapp, Lt. Latona, Cpt. Sheller, Hurley, Mental Health Staff, Sgt. Mascho, Cpl. Chianappi, Lt. Sarkis and Major Leone—placed or caused Plaintiff to be placed in administrative segregation and advised him that he had to take his medication before he would be returned to general population.  *Id.* at 27-31, 32-33, 38 (13th-15th, 17th and 22nd Claims).  While in administrative segregation Plaintiff was restricted to three showers per week, placed in waist chains and cuffs when out of his cell, denied contact visits and denied his one-hour of exercise for eight days in a row.  *Id.*

Defendants Cpl. Fennessy and Chief Administrative Officer Vanduzee on a few occasions denied Plaintiff grievance forms or denied grievances Plaintiff had filed related to his treatment at MCJ.  *Id.* at 25-26, 31-32 (11th-12th, 16th Claims).  On November 28, 2020, Defendant Cpl. Pfeffer falsely changed Plaintiff's classification from medium to maximum and refused to give Plaintiff a grievance form regarding an incident he had with MCJ officials—Defendants Deputy Boudrez, Cpl. Neusatz, Lt. DiMartino and Captain Sheller—over their decision to keep him on administrative segregation.  On November 9 and 27, 2020, Pfeffer also ordered that Plaintiff remain on administrative segregation and stated Plaintiff could not go back to general population until he took his medications.  *Id.* at 35 (19th Claim).  Between November 27 and December 1, 2020, Defendant Cpl. Peck ordered Plaintiff be placed on a five day lockdown, without any showers and exercise.  *Id.* at 36 (20th Claim).  On December 8, Defendants Sgt. Bevilacqua and Major Leone

continued Plaintiff's administrative segregation from November 9 by requiring that Plaintiff could not return to general population until he took his medications. *Id.* at 37 (20th Claim). Between December 1, 2020 and January 30, 2021, Defendant Cpl. Peck, Deputy Conheady and Lt. Sarkis, placed Plaintiff on 45-days punitive segregation without a shower for 12 days between December 17 and 29, and without his one hour of exercise between December 17, 2020 and January 25, 2021. These Defendants also kept Plaintiff on administrative segregation between December 9 and December 17, 2020. *Id.* at 45-46 (21st Claim).

On December 17, 2020, Plaintiff learned he had contracted COVID-19. This was caused by MCJ's failure to take necessary precautions to protect him from the virus by not cleaning the telephones and leaving his cell slot open "for a long time letting the COVID-19 in [his] cell." *Id.* at 47-48 (31st Claim). Before he learned he tested positive, he experienced chest pains, had no appetite, had a runny nose and was extremely tired. He had a preexisting heart problem. *Id.*

Plaintiff seeks over 22 million dollars in damages for his pain and suffering. *Id.* at 16.

## IV.   ANALYSIS

### A.  Claims Against Judges Renzi and Odorisi, and Attorneys Stubbe and Bahl

#### 1. Absolute Judicial Immunity

Plaintiff alleges that Judge Renzi (1) denied his request to replace his court-appointed attorneys and to allow him to represent himself, and (2) ordered a mental competency examination despite Plaintiff not acting in a manner that justified such an examination. Complaint at 15-17 (1st-3rd Claims). Judge Odorisi ordered that Plaintiff

be medicated for six months at RPC despite Plaintiff advising the Judge he was behaving himself.  *Id.* at 19-20 (6th Claim).  The Judges are entitled to absolute judicial immunity for their alleged actions and the claims against them must be dismissed.

It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities.  *See, e.g., Mireles v. Waco*, 502 U.S. 9 (1991).

> Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.* at 10 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)).  The protection of immunity is not pierced by allegations that the judge acted in bad faith or with malice, *Pierson v. Ray*, 386 U.S. 547, 554 (1967), even though unfairness and injustice to a litigant may result on occasion, *Mireles*, 502 U.S. at 9.  The United States Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to 42 U.S.C. § 1983.  *See Pierson*, 386 U.S. at 547.

The Supreme Court has developed a two-part test for determining whether a judge is entitled to absolute immunity.  *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  First, [a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Id.* at 356-57 (quoting *Bradley*, 80 U.S. at 351); *see also Maestri v. Jutkofsky*, 860 F.2d 50 (2d Cir. 1988) (finding no immunity where town justice issued arrest warrant for conduct which took place within neither his town nor  an adjacent town, thereby acting in the absence of all jurisdiction), *cert. denied*, 489 U.S. 1016 (1989).  Second, a judge is immune only for actions

performed in his judicial capacity. *Id.* at 360; *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974) (finding no immunity where judge assaulted litigant). *Stump* further distinguished between an "excess of jurisdiction" and "the clear absence of all jurisdiction" over the subject matter.

Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. *Stump* at 356 n.6 (citing *Bradley*, 80 U.S. at 351).

There can be no doubt based on the allegations set forth herein, that both Judges Renzi and Odorisi were acting within the scope of their judicial authority and the state court's subject matter jurisdiction over Plaintiff's criminal proceedings and, therefore, they are entitled to absolute immunity from suit herein. Because the Court finds that any attempt to amend these claims would be futile, *see Cuoco*, 222 F.3d at 112, the claims against Judges Renzi and Odorisi are dismissed with prejudice.

2. Attorneys Stubbe and Bahl

Plaintiff alleges that his court-appointed attorneys "agreed" with Judge Renzi's order directing a mental competency examination and later "agreed" with Judge Renzi and RPC Psychiatrists Mott and Weisman to have Plaintiff undergo further evaluation at RPC. Complaint at 16-17 (2nd-3rd Claims). In sum and substance, Plaintiff is alleging a

denial of effective assistance of counsel.  It is well established that an attorney representing a client in a criminal trial, whether that attorney is a public defender, legal aid attorney or court-appointed counsel, is not acting under the color of state law.  *Polk County v. Dodson*, 454 U.S. 312 (1981).  Here, Plaintiff has made no argument that Stubbe and Bahl were employees of or contracted with the state.  He also makes no allegation that they conspired with the Judge or any other person acting under color of state law.  *See, e.g., Tower v. Glover*, 467 U.S. 914, 923 (1984) (public defender who conspired with state officials held liable under Section 1983); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  Simply alleging that his attorneys "agreed" with the Judge when the Judge ordered a mental competency examination provided for in state law and a further evaluation does not set forth a plausible claim for relief.  Even assuming this allegation can be construed as asserting a conspiracy, there are no additional allegations beyond that bare assertion.  A conspiracy allegation that is wholly conclusory, is "insufficient even at the pleadings stage to establish that the public defenders were acting under color of state law."  *Tapp v. Champagne*, 164 F. App'x 106, 108 (2d Cir. 2006).  Thus, the claims against Stubbe and Bahl must be dismissed because they were not acting under "color of state law" and no § 1983 claim against them may be maintained.  Because the Court finds any amendment of these claims would be futile, leave to amend these claims is denied.  *See Cuoco*, 222 F.3d at 112.

### B.  Claims Against RPC Staff

Plaintiff alleges that on two occasions at RPC he was forced to take oral "mental health" medication.  On March 23, 2020, he was grabbed by two security officers, Mark and Cyphrin, at the direction of Jessica Ee, Caton and Acosta and they "force[d] mental

illness medication in [him]" without a court order.  *Id.* at 18 (4th Claim).  On April 21, Nelson, Caton and Dolittle were ready to have security officers strap Plaintiff down and inject him with Zyprexa if he did not take the medication orally.  He thus took the medication orally to avoid being injected.  Complaint at 18-19 (5th Claim).

Liberally construed, this claim alleges a violation of the Fourteenth Amendment's Due Process Clause.  *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").  The Supreme Court has "recognized that an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.' " *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)); *see also Riggins v. Nevada*, 504 U.S. 127, 133–35 (1992) ("The forcible injection of medication into a nonconsenting person's body . . . represents a substantial interference with that person's liberty.") (quoting *Harper*, 494 U.S. at 229).  "The scope of the right to refuse treatment, however, must be circumscribed by legitimate countervailing State interests." *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990) (citing *Sell*, 439 U.S. at 178) (citation omitted); *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (concluding that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment").  "[I]t is wellsettled that a patient's liberty interest in not being involuntarily medicated is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of

physical harm to that patient, other patients, or to staff members of the institution." *Odom v. Bellevue Hosp. Ctr.*, 93 Civ. 2794, 1994 WL 323666 at *3 (S.D.N.Y. July 5, 1994); *Kulak v. City of N.Y.*, 88 F.3d 63, 74 (2d Cir.1996).

While the facts are somewhat vague regarding who compelled Plaintiff to take oral medication[6] under the threat of a forced injection if he did not comply and the circumstances of how that alleged coercion occurred, the Court finds, at this stage in the litigation, that this claim can proceed to service against the RPC Defendants set forth above. *See, e.g., Baxter v. Wagner*, 802 F. App'x 32, 33 (2d Cir. April 23, 2020) ("Although the district court must dismiss a case if the action 'fails to state a claim on which relief may be granted,' 28 U.S.C. § 1915(e)(2)(B)(ii), *sua sponte* dismissal of a § 1983 claim is inappropriate if the complaint alleges that '(1) the defendant was a state actor . . . when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.' ") (quoting *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (internal quotation marks omitted)); *McEachin*, 357 F.3d at 200) ("We have frequently reiterated that '[s]ua *sponte* dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is

---

[6] At this time, the Court is not opining on whether the medication Plaintiff claims he was forced to take is a psychotropic medication.   *See Harper*, 494 U.S. at 214 ("Antipsychotic drugs, sometimes called 'neuroleptics' or 'psychotropic drugs,' are medications commonly used for treating mental disorders such as schizophrenia ... the effect of these and similar drugs is to alter the chemical balance in the brain, the desired result being that the medication will assist the patient in organizing his or her thought processes and regaining a rational state of mind.")

disfavored by this Court.' ") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)).[7]

### C. Claims Against MCJ Staff

1. Due process claims related to administrative segregation

The several claims arising from Plaintiff's detention at MCJ are more difficult to construe and are more broadly brought against numerous individuals.  Complaint at 20-47 (7th-30th Claims).  Plaintiff alleges that (1) he was removed from general population and placed, at different times, in a constant cell, reserved for suicidal inmates, *id.* 20-24, 41 (7th-9th, 25th Claims) and administrative segregation, *id.* at 27-31, 32-33, 38-39, 42-43, 46-47) (13th-15th, 17th, 22nd, 26th and 30th Claims), where he was denied certain privileges that others inmates were entitled, and (2) he was told he could not return to general population until he took his medication.  *Id.* at 37 (21st Claim).  These allegations are construed as arising under the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535, 537-38 (1979) ("Not every [restriction of confinement] imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however." A Court must determine whether a condition or restriction placed upon a pretrial detainee "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Darnell v. Piniero*, 849 F3d 17, 33-35 (2d Cir. 2017).  Plaintiff also alleges (1) he was denied grievance forms and his grievances were denied, *id.* at 25-27, 31-32 (11th-12th and 16th Claims); (2) his security classification was changed from medium to maximum, *id.* at 35 (19th Claim), (3)

---

[7] In allowing these claims to proceed and directing a response to them, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

he was placed in a five-day lockdown, *id.* at 36 (20th Claim), and (4) he was placed in punitive segregation for 45 days, *id.* at 45-46 (29th Claim).

These claims, as best the Court can discern, allege that Plaintiff was removed from general population and placed in a constant cell or administrative segregation because his mental health was "lacking" or he did not take his medication. They also appear to allege that while confined in this type of administrative segregation his privileges were limited--he had to wear waist chains and cuffs when out of his cell, he could shower only three days each week and, on certain days, he did not get his one hour of exercise. *E.g.*, Complaint at 20-22, 27-29.

Under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535;[8] *see also Richardson v. Vermont*, Civil Action No. 1:15–cv–120, 2015 WL 9921313, at *7 (D. Vt. Dec. 23, 2015) ("The standard applicable to pretrial detainees is whether the conditions of pretrial confinement amount to "punishment.") (quoting *Friedland v. Otero,* Civil No. 3:11CV606 (JBA), 2014 WL 1247992, at *4 (D. Conn. Mar. 25, 2014) (citing *Bell,* 441 U.S. at 535–37 ))). "Not every [restriction of confinement] imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however." *Bell*, 441 U.S. at 537. The Court must determine whether a condition or restriction placed upon a pretrial detainee "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538; *see also Cabral v. Strada,* 513 F. App'x 99, 101 (2d Cir. 2013).

---

[8] *Sandin v. Conner*, 515 U.S. 472 (1995), "does not apply to pretrial detainees and . . . accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process." *Iqbal v. Hasty*, 490 F.3d 143, 163 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' " *Id.* (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).   When "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Id.* at 539.  The courts

> 'ordinarily defer to [the] expert judgment' of prison officials 'in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response' to administrative considerations.   [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'

*Cabral*, 513 F. App'x at 101 (quoting *Bell*, 441 U.S. at 538-39).

"Additionally, . . . even if a pretrial detainee has been properly subject to administrative segregation, substantive due process also applies to the conditions imposed on the detainee, which must be reasonably related to a legitimate government purpose, such as institutional security."  *Wilson v. Santiago*, No. 3:19-cv-1807 (JAM), 2020 WL 5947322, at *4 (D. Conn. Oct. 7, 2020) (citing *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017)).  In *Almighty Supreme Born Allah*, "[t]he Second Circuit raised questions about whether certain conditions 'were reasonably related to the ostensible goal of prison security,' including solitary confinement for 23 hours per day, showering in leg irons and wet underwear, no programming or counseling therapy, and strict limits on visits, phone calls, and mail."  *Wilson*, 2020 WL 5947322, at *4 (quoting *Almighty Supreme Born Allah*, 876 F.3d at 58) and citing *Darnell*, 849 F.3d at 29

16

(discussing general conditions of confinement requirements to provide food, clothing, and shelter for pretrial detainees under the Fourteenth Amendment)).

As noted, Plaintiff's allegations related to being placed in administrative segregation are generally broad and non-specific and are brought against numerous defendants, both supervisory and non-supervisory officials at MCJ.   In sum and substance, the allegations allege little more than that Plaintiff was removed from general population and placed in either a constant cell or administrative segregation because of his mental health.   While he vehemently disagrees with any conclusions or diagnoses regarding his mental health, there are no allegations supporting a violation of Plaintiff's due process rights.   Plaintiff does not plausibly allege that his confinement was imposed with "an expressed intent to punish" him or was not "reasonably related to a legitimate governmental purpose." *Bell*, 441 U.S. at 538-39.  Further, the Complaint, while indicating which Defendants "violated [his] rights," *e.g.*, Complaint at 22-23 (9th Claim), in relation to each of several separate claims brought against individuals at MCJ, is too conclusory as it relates to each Defendant's alleged misconduct.   In other words, the Complaint does not sufficiently allege how each Defendant named in each claim was directly involved in placing Plaintiff in either a constant cell or administrative segregation. *See Tangretti*, 983 F.3d at 612.

Accordingly, the claims alleging a violation of Plaintiff's due process rights in relation to his placement in a constant cell or administrative segregation at MCJ fail to state a plausible claim for relief and will be dismissed unless Plaintiff files an amended complaint as directed below.  Plaintiff's amended complaint must address the failures in his Complaint, as set forth herein, related to his due process claims and how each of the

Defendants named violated Plaintiff's constitutional rights through that Defendant's "own individual actions . . . ." Id.[9]

### 2. Grievances

The Complaint alleges that a couple of Plaintiff's grievances were denied and that he was denied grievance forms to submit grievances.  Complaint at 25-26 (11th Claim), 26-27 (12th Claim) and 31-32 (16th Claim).  These claims are dismissed with prejudice. "[I]nmate grievance programs created by state [or local] law are not required by the Constitution and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable § 1983 claim."  Shell v. Brzezniak, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) (citing Cancel v. Goord, No. 00 Civ.2042(LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983. . . . Thus, [the plaintiff's] claim that the Defendants violated his First Amendment right of access to the courts and right to petition the government for redress by failing to process his grievances lacks merit and is dismissed with prejudice.")); see, e.g., Torres v. Mazzuca, 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) ("Prison grievance procedures do not confer any substantive right upon an inmate ...."); see also Anderson v. Duke, No. 04 Civ. 0030(NAM), 2008 WL 238557, at *7 (N.D.N.Y. Jan. 28, 2008); Carroll v. Callanan, No. 05 Civ. 1427(LEK), 2007 WL 965435, at *6 (N.D.N.Y. Mar. 30, 2007).

---

[9] Plaintiff's claims that he was placed in a five-day lockdown, subjected to punitive segregation for 45 days, Complaint at 36 (20th Claim) and 45-56 (29th Claim), and that his security classification was changed, id. at 35 (19th Claim), are subject to the same due process analysis set forth above and will similarly be dismissed with prejudice unless Plaintiff files an amended complaint sufficiently alleging due process claims related to these allegations.  See generally Covino v. Vermont Department of Corrections, 933 F.2d 128, 129 (2d Cir.1991) (the Second Circuit has noted that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reason' is not a right protected by the due process clause itself.") (internal quotations and citations omitted); Torres v. Stewart, 263 F. Supp. 2d 463, 468 (D. Conn. 2003) (citing Bell, 441 U.S. at 535-37).

### 3. COVID-19: Deliberate Indifference

Lastly, Plaintiff alleges that on December 7, 2020, he learned he had contracted the COVID-19 virus and that MCJ failed to protect him from contracting the virus. He alleges that MCJ officials: (1) placed him in a cell in the rec-annex on November 9, which was not fully cleaned; (2) did not clean the telephone before he used it; and (3) left his cell slot open for "a long time" thereby "letting" the virus in his cell. Complaint at 47-48 (31st Claim).

First, to the extent Plaintiff intends to sue MCJ, as opposed to any of its officials or employees who were personally involved in the alleged constitutional violation, MCJ, as a department or arm of the County of Monroe, is not subject to suit under § 1983. The proper defendant in this situation is the County. *See, e.g.*, *Warren v. Westchester County Jail,* 106 F. Supp. 2d 559, 561 (S.D.N.Y. 2000) (where inmate brought suit under 42 U.S.C. § 1983 against Westchester County Jail, the correct governmental defendant was Westchester County). The Court, however, will construe this claim as brought against the County, *see Warren*, 106 F.3d at 561, but, this claim will nonetheless be dismissed with prejudice unless Plaintiff files an amended complaint against the County and/or individual officials or employees of MCJ or the County who were personally involved in the alleged denial of adequate protection against COVID-19.[10]

Second, because municipalities are not subject to § 1983 liability solely on the basis of vicarious liability or *respondeat superior, see Monell v. N.Y. City Dep't of Soc.*

---

[10] While this claim specifically and solely refers to MCJ as the defendant that violated Plaintiff's rights by not taking adequate protections against COVID-19, Complaint at 47-48, and while other portions of the Complaint refer to MCJ as a Defendant, MCJ is not identified as a Defendant either in the Caption or "Defendant's Information" section of the Complaint. Because this claim and other claims that refer to MCJ as a defendant are being dismissed with leave to amend, Plaintiff is advised that, if he intends to sue the County, he must name the County as a defendant in the Caption and Defendant's Information section of the amended complaint.

*Servs.*, 436 U.S. 658, 694 (1978), in order to establish liability against a municipality, a plaintiff must show that the alleged constitutional violation occurred pursuant to a policy or custom of the municipality.  *See id.*; *see also Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992) (Municipalities are not subject to § 1983 liability solely based on a *respondeat superior* theory.)   The Complaint alleges no such policy or custom and, therefore, it fails to state a claim against the County of Monroe for his contraction of the virus at MCJ.

Third, even if Plaintiff had plausibly alleged a policy or custom, his allegations fall short of setting forth a claim of deliberate indifference under the less exacting Fourteenth Amendment due process deliberate indifference standard.  *See Darnell*, 849 F3d at 33. To succeed on this claim, Plaintiff must show (1) "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness" and (2) the defendants acted intentionally to impose the alleged conditions or recklessly failed to mitigate the risk that the conditions posed to him even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.  *Id.* at 30, 35 (internal quotation marks omitted).  "It is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death[,]" *Petitpas v. Griffin*, No. 3:20-cv-00769 (JAM), 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020) (citation and internal quotation marks omitted), but Plaintiff's conclusory allegations fail to allege either component of the Fourteenth's Amendment's due process standard.  Cf. *McFadden v. Annucci*, 18-CV-6684 FPG, 2021 WL 4633829, at *14 (W.D.N.Y. Feb. 9, 2021) (Geraci, C.J.) (Under the more exacting Eighth Amendment standard, the Court

found that "Plaintiff's conclusory allegations fail to allege the subjective component of an Eighth Amendment claim and contain no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed."). While Plaintiff suggests a few different ways in which he may have contracted the virus, his allegations neither set forth that the conditions he alleges posed an excessive risk to his health or safety, nor that MCJ officials or employees knew or should have known that the conditions alleged posed a significant risk of serious illness or death. *Darnell*, 849 F.3d at 30, 35; *see also Hebert v. Smith*, 20-CV-6348 (PMH), 2020 WL 5898977, at *3 (S.D.N.Y. Oct. 5, 2020) (Plaintiff's allegations that Defendants "did not provide him with the means to protect himself from contracting COVID-19]" were "vague" and did not state a plausible Fourteenth Amendment claim. Plaintiff did not "allege specific facts showing that these conditions put his health or safety at risk and that prison officials acted with deliberate indifference. For example, Plaintiff d[id] not explain for how long he was exposed to these circumstances.") (collecting cases)).

Plaintiff's claim based on contracting COVID-19 is therefore dismissed but with leave to amend. As addressed above, if Plaintiff wishes to amend this claim against the County, he must allege that the due process violation occurred pursuant to a policy or custom of the County of Monroe. If he also seeks to sue individuals at MCJ whom he claims were deliberately indifferent to his risk of contracting COVID-19, he must allege they were directly involved in the due process violation.

## V. Motion to Appoint Counsel

Plaintiff's motion for the appointment of counsel is denied without prejudice as premature. In deciding whether to appoint counsel, the Court should first determine

whether the indigent's position seems likely to be of substance, and if the claim meets this threshold requirement, the Court should then consider a number of other factors in making its determination. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). This action was only recently commenced.   Defendants have not yet responded to the allegations contained in Plaintiff's Complaint, and the only facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of Plaintiff's Complaint wherein he states the facts surrounding his claim. At this stage, the Court lacks sufficient information to consider the factors set forth in *Hodge*.

## CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted.  For the reasons set forth above, Plaintiff's claims regarding his criminal prosecution against Defendants Judges Renzi and Odorisi, and Joshua Stubbe and Victoria Bahl (1st-3rd and 6th Claims) and the claims related to Plaintiff's grievances or the refusal to provide him grievance forms against Defendants Cpl. Fennessy and Chief Administrative Officer Vanduzee (Complaint, 11th-12th and 16th Claims) are dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii), and 1915A(b)(1)-(2).   In addition, Plaintiff's claims regarding his confinement at the Monroe County Jail (7th-9th, 13th-15th, 17th-31st Claims) must be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), unless Plaintiff files an amended complaint **no later than 45 days from the date of this Order** in which he sufficiently pleads these claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action.   "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) (*quoting Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).   Therefore, Plaintiff's amended complaint must include all of the allegations against each of the remaining Defendants (not including Judges Renzi and Odorisi, and Stubbe and Bahl), so that the amended complaint may stand alone as the sole complaint in this action which Defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the claims related to his confinement at the Monroe County Jail (7th-9th, 13th-15th, and 17th-31st Claims) will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and service will be made of only the claims related to his forced medication at the Rochester Psychiatric Center against Defendants Mott, Wiseman, Jessica "Ee", Beth Caton, Christine Acosta, "Mark," Cyphrin, Nelson and Dolittle (4th-5th Claims).

## ORDER

IT HEREBY IS ORDERED that Plaintiff's motion to proceed *in forma pauperis* is granted and his motion for appointment of counsel is denied without prejudice;

FURTHER, that Plaintiff's claims regarding his criminal prosecution against Defendants Judges Renzi and Odorisi, and Joshua Stubbe and Victoria Bahl (1st-3rd and 6th Claims) and the claims related to Plaintiff's grievances or the refusal to provide him grievance forms against Defendants Cpl. Fennessy and Chief Administrative Officer Vanduzee (11th-12th and 16th Claims) are dismissed with prejudice and the Clerk of the

Court is directed to terminate Defendants Judges Renzi and Odorisi, Stubbe and Bahl as parties to this action;

FURTHER, that Plaintiff is granted leave to file an amended complaint regarding only his claims related to his confinement at the Monroe County Jail (7th-9th, 13th-15th, 17th-31st Claims) as directed above[11] **no later than 45 days from the date of this Order;**

FURTHER, that the Clerk of Court is directed to send to Plaintiff with this Order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event Plaintiff fails to file an amended complaint as directed above **no later than 45 days from the date of this Order**, the claims related to his confinement at the Monroe County Jail (7th-9th, 13th-15th, and 17th-31st Claims) will be dismissed with prejudice without further order of the Court and the Clerk of the Court shall terminate Defendants Nos. 14-50 as identified in the "Defendant's Information" section of the Complaint, Complaint at 2-3; and

FURTHER, that in the event Plaintiff fails to file an amended complaint as directed above **no later than 45 days of the date of this Order,** the Clerk of Court is directed to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order regarding the claims of forced medication at the Rochester Psychiatric Center upon Defendants Mott, Wiseman, Jessica "Ee", Beth Caton, Christine Acosta, "Mark," Cyphrin,

---

[11] **Error! Main Document Only.**Plaintiff is reminded that he must also include in this amended complaint his claims regarding his forced medication at the Rochester Psychiatric Center. Because the amended complaint will become the sole complaint in the action, it is the only complaint which will be served on the parties. Failure to include these claims in it means that they will not be preserved for service on the Defendants.

Nelson and Dolittle (4th-5th Claims), without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to answer the Complaint upon service.

SO ORDERED.

_____
David G. Larimer
United States District Judge

DATED: _____, 2021
            Rochester, NY